# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA MCGILL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-374 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Defendant's Motion for Summary Judgment (Doc. 10) will be granted, and Plaintiff's Motion for Summary Judgment (Doc. 7) will be denied.

Plaintiff (hereinafter, "Claimant") has filed this social security appeal, challenging the ALJ's denial of SSI and disability insurance benefits in a decision dated August 11, 2011. *See generally* Compl. (Doc. 1); ALJ's Decision, R. at 14-25. The ALJ found that Claimant suffered severe impairments, but that Claimant's conditions did not preclude her from performing a limited range of sedentary work. *See id.*[1] The vocational expert testified that an individual with Claimant's limitations could perform jobs existing in significant numbers in the

---

[1] The ALJ determined that Claimant suffered the severe impairments of degenerative disc disease of the lumbar spine, HIV infection, major depressive disorder, generalized anxiety disorder and panic disorder with agoraphobia. *Id.* at 16. The ALJ found that these impairments limited Claimant to sedentary work that: requires only occasional balancing, stooping, kneeling, crouching and crawling; excludes all climbing of ladders, ropes or scaffolds; allows alternate sitting and standing, at will, throughout the workday; avoids hazards, such as heights and moving machinery; requires only simple, routine and repetitive tasks, with short instructions, involving little or few work place changes; and has only occasional contact with the public and co-workers. *Id.* at 18.

national economy, and the ALJ found Claimant not disabled at step five of the sequential analysis. *See id.*

Having carefully reviewed the entire record, the undersigned concludes that the ALJ's decision was neither erroneous nor unsupported by substantial evidence. Accordingly, the Court will limit its discussion to the points of error alleged by Claimant. *See* Pl.'s Br. (Doc. 8).

First, Claimant's challenges the ALJ's evaluation of a check-box form completed by treating physician Sunil Bhat, dated May 25, 2011. *See* R. at 585-89. As the ALJ noted, in a similar check-box form completed by Dr. Bhat only three weeks prior, he declined to answer inquiries regarding Claimant's residual functional capacity ("RFC"), responding by handwritten note that he was "unable to evaluate" her in this regard. *See* R. at 574-77; *see also* ALJ's Decision, R. at 21 (noting same). Nevertheless, three weeks later, Dr. Bhat completed a materially similar form, indicating, without explanation or citation to clinical findings, that Claimant could work only 4 hours a day; she could sit only for 30 minutes; she could occasionally lift 10 pounds, and frequently lift 5 pounds; and that she had a number of "moderate[]" to "marked[]" "psychiatric limitations." *See* R. at 587.

The ALJ determined that Dr. Bhat's assessments were not entitled to controlling weight, and he gave "little weight" to the finding that Claimant could work only 4 hours a day. ALJ's Decision, R. at 21. The ALJ found this limitation to be unsupported by medically acceptable clinical and diagnostic techniques, and inconsistent with other substantial medical and nonmedical evidence in the record. *Id.* This included the treatment records of Dr. Frye, who characterized claimant as suffering "a small disc herniation," and Dr. Bellotte's recommendation that Claimant engage in physical therapy, which she was "very reluctant to try," before considering any further treatment. *See id.*; *see also* R. at 594 (Dr. Frye's report, stating,

2

"[s]he has a small disc herniation") *and* R. at 337 (Dr. Bellotte's post-MRI report, stating, "I do not think it is appropriate to move on with anything aggressive without a good trial of physical therapy," which Claimant "[was] very reluctant to do"). The ALJ observed that, although Claimant was referred to physical therapy, her treatment records revealed only one visit, notwithstanding her testimony that she attended for one month but ceased when it began increasing her back pain. *See* ALJ's Decision, R. at 21; *compare also id.* (noting inconsistency between physical therapy record and Claimant's testimony, and finding that this undermined her credibility) *with* Pl.'s Br. (failing to reference or dispute ALJ's findings of inconsistency regarding physical therapy). In any event, the ALJ did credit Dr. Bhat's report to the extent that his findings were consistent with limitations in Claimant's RFC, namely work at the sedentary level with an "at will" sit-stand option. *See* ALJ's Decision, R. at 21-22.[2]

Claimant argues that the ALJ "did not specify what weight[, if less than] controlling," he afforded Dr. Bhat's opinions, and she contends that the ALJ did not identify which other medical evidence he relied upon in discrediting Dr. Bhat's opinions. *See* Pl.'s Br. at 9, 11. The Court finds, however, that the ALJ's decision was sufficiently clear in these regards. *See* discussions *supra* (summarizing ALJ's analysis). To the extent Claimant actually is complaining that the ALJ should have elicited further "expert" medical opinion regarding her

---

[2] Although Claimant does not specifically challenge the ALJ's determinations regarding Dr. Bhat's mental-impairment responses, the ALJ found that Dr. Bhat's "opinions" carried limited weight because: the physician was a general care practitioner, with no mental health care specialty; his assessments were reflected in a "check –[box]" form; and there was no indication that Dr. Bhat assessed the "marked" or "extreme" categories as terms of art consistent with the regulations. *Id.* at 23. The ALJ acted within his province in these regards. *See generally* Burke v. Comm'r of Soc. Sec., 2009 WL 567229, *3 (3d Cir. Mar. 6, 2009) (treating physician's opinion may be afforded less weight if it is "[not] well-supported by medically acceptable clinical and laboratory diagnostic techniques") (citation omitted) *and* Irelan v. Barnhart, 2003 WL 22871890, *3 (3d Cir. Dec. 4, 2003) (in weighing reports of treating physician, ALJ may consider, among other things, "the physician's expertise and specialty") (citation omitted).

3

RFC, the ALJ was not required to do so. *See* Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) ("the ALJ is not precluded from reaching RFC determinations without outside medical expert review" and, "[a]lthough reliance on State consultants' . . . opinions is common, . . . the regulations do not require ALJs to seek [them]") (citations omitted). Indeed, any calls for further opinion would be particularly rich, given Claimant's unexplained failure to appear for two consultative examinations scheduled by the Commissioner. *Compare* ALJ's Decision, R. at 23 (noting same) *with* Pl.'s Br. (failing to dispute that Claimant was "no-show" for consultative examinations, and offering no explanation for her failure to appear). Claimant's omissions could, in their own right, have warranted an unfavorable disability determination, *see* ALJ's Decision, R. at 23 *and* 20 C.F.R. § 416.918, and the Court does not believe that Claimant properly can complain of perceived shortcomings in the record that resulted from her own attendance failures.

Otherwise, the ALJ specifically tailored the Claimant's RFC to the medically demonstrable limitations he found in the record, endorsing the lowest exertional level (sedentary) and placing numerous limitations on the range of permissible work. *Compare* discussion *supra* (allowing for work requiring only occasional balancing, stooping, kneeling, crouching and crawling; excluding all climbing of ladders, ropes or scaffolds; allowing alternate sitting and standing, at will, throughout workday; avoiding hazards, such as heights and moving machinery; requiring only simple, routine and repetitive tasks, with short instructions, involving little or few work place changes; and requiring only occasional contact with the public and co-workers). To the degree that Dr. Bhat endorsed greater restrictions, the ALJ explained why he found them to be unsupported by medically acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence. The ALJ's RFC determination was supported by

substantial evidence, and Claimant's arguments regarding Dr. Bhat, and the other treating physicians referenced in passing in her brief, are without merit.

Many of Claimant's remaining arguments fail on their face. For example, Claimant suggests that the ALJ minimized her back problems through references to her suffering "a small herniated disc," when, in fact, that language was directly quoted from her treating physician's reports. *Compare* Pl.'s Br. at 10 *with* R. at 594. Claimant also argues that the ALJ erred in discrediting her subjective reports regarding mental impairments based on, among other things, a large gap in the medical records between May 2009 and April to June 2011 (coincidentally, right around the time of her disability hearing). *See* ALJ's Decision, R. at 22. Claimant insinuates that her failure to seek treatment was consistent with her agoraphobia symptoms, Pl.'s Br. at 11, but this fails to account for her having appeared for a number of intervening medical examinations regarding her physical conditions. *See, e.g.*, R. at 375 (Sept. 17, 2009), R. at 362 (Oct. 21, 2009), R. at 363 (Dec. 12, 2009), R. at 578 (Mar. 4, 2010), R. at 519 (Mar. 15, 2010) & R. at 597 (Mar. 23, 2010).[3] Equally important was the ALJ's conclusion that reports in 2011 regarding her mental impairments did not establish the 12-month durational requirement under the Act. *See* ALJ's Decision, R. at 23; *see also id.* at 25 (dating decision August 11, 2011, only four months after temporally-relevant treatment of mental impairments). Claimant offers no reply, and the ALJ's finding of insufficient duration was supported by substantial evidence.

---

[3] Although the Court normally will not engage in reasoning outside of the ALJ's decision, Claimant's argument regarding her two-year gap in mental health treatment could not reasonably have been anticipated by the ALJ. Claimant's argument is retrospective in nature, and, under the circumstances, so to must be the Court's consideration of it. In any event, the ALJ's finding that Claimant's lack of treatment undermines her subjective claims is supported by substantial evidence.

5

Claimant's challenges regarding the ALJ's credibility determinations likewise are unpersuasive. Contrary to Claimant's suggestion, the ALJ did not "work backward" by first determining her RFC and then construing her credibility consistently. *Cf.* Pl.'s Br. at 12-13 (arguing same). Rather, the ALJ conducted a detailed evaluation of Claimant's testimony and subjective complaints and found that, although her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements regarding their intensity, persistence and limiting effect were not credible. ALJ's Decision, R. at 18-19.

While Claimant's brief infers that the ALJ's credibility determination rested solely on her ability to watch television and work on puzzles and scrapbooking, Pl.'s Br. at 14, this simply mischaracterizes the record. *See, e.g.*, ALJ's Decision, R. at 19 (highlighting Claimant's testimony that she did dishes, made bed, ran vacuum cleaner, let her dogs out, cooked, did laundry, and visited with family). The ALJ highlighted numerous other inconsistencies between Claimant's subjective complaints and the record, and noted signs that Claimant was exaggerating her symptoms in an effort to secure benefits. *See* ALJ's Decision, R. at 18-19 (treatment in 2005 aside, Claimant did not begin seeing specialist or taking medicine for mental impairments until spring of 2011, shortly after she retained counsel in SSA proceedings); *id.* at 19 (admitting, contrary to Dr. Bhat's check-box report, that she could lift 15-20 pounds); *id.* at 19 (noting inconsistency between Claimant's testimony regarding physical therapy and treatment notes, referenced *supra*); *and id.* at 19 (highlighting that Claimant was required to adjust her alleged disability onset date from 2004 until March 2009 based on interim employment). Claimant has not meaningfully challenged any of these findings, and they all were permissible considerations under the Act. *See generally, e.g.*, <u>Massaro v. Comm'r of Soc. Sec.</u>, 2003 WL 22962949, *4 (3d Cir. Dec. 17, 2003) (ALJ may consider sporadic treatment record

and activities of daily living in determining credibility of subjective complaints); Hutchins v. Astrue, 2012 WL 995274, *1 n.1 (W.D. Pa. Mar. 23, 2012) ("it [is] not improper for [an] ALJ to consider the possibility that [p]laintiff had ulterior motives underlying [her] efforts to seek disability benefits"); *and* Vega v. Comm'r of Soc. Sec., 2009 WL 5031363, * (3d Cir. Dec. 23, 2009) ("an ALJ may consider a claimant less credible if the individual fails to follow [a] prescribed treatment plan without good reason").

For all of the reasons stated above, Claimant has not demonstrated that the ALJ's decision was erroneous or lacking the support of substantial evidence.[4] The Commissioner's decision hereby is AFFIRMED, and the Court enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 7**) is **DENIED**, and Defendant's Motion for Summary Judgment (**Doc. 10**) is **GRANTED**.

IT IS SO ORDERED.


March 28, 2014                         s\Cathy Bissoon
                                       Cathy Bissoon
                                       United States District Judge

cc (via ECF email notification):

All counsel of record

---

[4] Claimant's only remaining challenges, regarding the hypothetical question posed to the vocational expert, rely in substance on the arguments already rejected above.